ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **HERMELINDA MOLINA LUGO**<br>PETICIONARIA(S)-RECURRIDA(S)<br><br><br>**JOEL HERNÁN RAMOS ROLÓN**<br>PETICIONARIA(S)-RECURRENTE(S)<br><br>**EX PARTE** | **KLCE202400832** | ***Certiorari***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN**<br><br>Caso Núm.<br>**D DI2009-0393** (3006)<br><br>Sobre:<br>Divorcio (Alimentos) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 13 de septiembre de 2024.

Comparece ante este Tribunal de Apelaciones, el señor **JOEL HERNÁN RAMOS ROLÓN** (señor **RAMOS ROLÓN**) mediante *Certiorari* instado el 29 de julio de 2024. En su recurso, nos solicita que revisemos la *Resolución* decretada el 25 de junio de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[1] Mediante la alusiva decisión, el foro primario confirmó que el dinero consignado corresponde a un reclamo de reembolso de gastos extraordinarios incurridos durante la vigencia de la pensión provisional de alimentos (desde julio de 2022 a octubre de 2022); requirió a la Unidad de Cuentas emitir cheque desembolsando el dinero consignado a favor de la señora **HERMELINDA MOLINA LUGO** (señora **MOLINA LUGO**); se encontró en *temeridad* al señor **RAMOS ROLÓN**; y se le impuso la cantidad de $3,000.00 en concepto de honorarios a favor de la señora **MOLINA LUGO** a satisfacer dentro del plazo de cuarenta y cinco (45) días.

---

[1] Este dictamen judicial fue notificado y archivado en autos el 25 de junio de 2024. Apéndice del *Certiorari*, págs. 279- 286.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 20 de febrero de 2009, los señores **MOLINA LUGO** y **RAMOS ROLÓN** entablaron una *Petición* sobre divorcio por la causal de mutuo consentimiento. Así las cosas, el 20 de marzo de 2009, se dictó *Sentencia* en la cual, entre otras cosas, se dispuso sobre la pensión alimentaria, custodia, patria potestad y relaciones filiales.

Posteriormente, el 14 de julio de 2022, la señora **MOLINA LUGO** presentó una *Solicitud de Revisión de Pensión Alimentaria*.[2] El 7 de septiembre de 2022, el señor **RAMOS ROLÓN** presentó *Urgente Moción Asumiendo Representación Legal y en Solicitud de Cambio de Señalamiento*.[3] En dicho escrito, se informó, entre otras cosas, que había un conflicto de calendario y el señor **RAMOS ROLÓN** "acepta su obligación y capacidad para cubrir las necesidades de su hija menor de edad y solicita una vista evidenciaria de conformidad a lo resuelto en Ferrer v. González, 169 D.P.R. 172 (2004)."

El 9 de septiembre de 2022, la señora **MOLINA LUGO** presentó una *Solicitud de Desacato por Incumplimiento con el Pago de la Pensión Alimentaria* reclamando deuda por concepto de alimentos y gastos escolares.[4] El 22 de septiembre de 2022, el señor **RAMOS ROLÓN** presentó *Moción en Solicitud de Exposición más Definida y Solicitud de Término para Presentar Oposición (Regla 10.4 de la de Procedimiento Civil)*.[5] Al poco tiempo, el 30 de septiembre de 2022, se expidió una *Orden* en la cual se proveyó lo siguiente: "Se ordena a la Sra. Molina Lugo aclarar cómo llega a la cuantía alegada. Deberá presentar el desglose mes a mes. Se conceden 7 días."[6]

Más tarde, el 11 de octubre de 2022, la señora **MOLINA LUGO** presentó su *Escrito en Cumplimiento de Orden con Relación a Deuda en Concepto de*

---

[2] Apéndice del *Certiorari*, pág. 1.
[3] *Íd.*, págs. 2- 3.
[4] *Íd.*, págs. 4- 5.
[5] *Íd.*, págs. 6- 7.
[6] *Íd.*, pág. 8.

*Pensión Alimentaria*.[7] Alegó la existencia de una deuda por concepto de la obligación alimentaria ascendente a $8,669.40 desde abril de 2020 hasta **septiembre de 2022**; y $2,656.00 por gastos escolares desde el 15 de julio de 2012 hasta el **31 de julio de 2018**.

El 7 de octubre de 2022, las partes comparecieron, mediante videoconferencia, a la audiencia sobre revisión de pensión alimentaria ante el examinador de pensiones alimentarias. El 13 de octubre de 2022, se decretaron dos (2) *Órdenes*: (i) requiriéndole al señor **RAMOS COLÓN** replicar en o antes de veinte (20) días y sustentar con evidencia de pago, si alguna; y (ii) refiriendo el caso a la consideración del examinador de pensiones alimentarias.[8] El 17 de octubre de 2022, se pronunció una *Resolución* previniendo la **pensión alimentaria provisional**.[9]

Después, el 21 de octubre de 2022, la señora **MOLINA LUGO** presentó una *Solicitud de Orden con Relación al Pago en Concepto de Reembolso de Gastos.*[10] Arguyó que había gastos pendientes de reembolso desde el mes de **julio de 2022** y recibido dos (2) cheques: $323.98 y $1,045.00 quedando un balance de $629.45. El 27 de octubre de 2022, se dictaminó *Orden* requiriéndole exponer su posición en o antes de diez (10) días, so pena de conceder el remedio solicitado, al señor **RAMOS COLÓN.**[11] El 3 de noviembre de 2022, el señor **RAMOS COLÓN** presentó su *Oposición a "Escrito en Cumplimiento de Orden con Relación a Deuda en Concepto de Pensión Alimenticia"* y *"Solicitud de Desacato por Incumplimiento con el Pago de la*

---

[7] Apéndice del *Certiorari*, págs. 9- 56.

[8] *Íd.*, págs. 57- 58.

[9] Esta *Resolución* dispone que las partes **acordaron bajo juramento y de manera provisional** que el señor **RAMOS ROLÓN** pagará $204.30 bisemanales, más el pago directo de las mensualidades de colegio, matrícula y trabajos de ortodoncia por concepto de *pensión alimentaria*. El pago se realizaría mediante *Orden de Retención de Ingresos* a depositarse en cuenta en la Administración para el Sustento de Menores (ASUME), **efectivo el 7 de octubre de 2022**. En adición, el señor **RAMOS ROLÓN** continuaría proveyendo el plan médico y asumiría el 100% de los *gastos médicos* no cubiertos por el plan, así como los gastos de regreso a la escuela de materiales, uniformes, libros y educativos extraordinarios. Excluyendo el tratamiento de ortodoncia y deducibles médicos regulares. Asimismo, las partes convinieron que, de haber alguna deuda de retroactivo, someterían la estipulación de su monto por escrito. Apéndice del *Certiorari*, págs. 59- 60.

[10] *Íd.*, págs. 63- 76.

[11] Apéndice de la *Oposición a que se Expida el Auto de Certiorari*, págs. 1- 2.

*Pensión Alimentaria.*"[12] Adujo haber cumplido a cabalidad con su obligación alimentaria y tener un crédito a ser aplicado a cualquier balance futuro de pensión alimentaria. El 10 de noviembre de 2022, la señora **Molina Lugo** presentó un *Escrito Reiterando Solicitud de Orden por No Haber Oposición con Relación al Pago en Concepto de Reembolso de Gastos.*[13] A los pocos días, el 14 de noviembre de 2022, la señora **Molina Lugo** presentó *Escrito Reiterando Solicitud de Orden por No Haber Oposición con Relación al Pago en Concepto de Reembolso de Gastos y Urgente Solicitud de Severas Sanciones con [el] Copeticionario, Joel Ramos Rolón y su Representante Legal, Lcdo. Orville O. Valentín sobre Escrito Reiterando Solicitu[d] de Orden por No Haber Oposición con Relación al Pago en Concepto de Reembolso de Gastos.*[14] Acto seguido, el 18 de noviembre de 2022, el señor **Ramos Rolón** presentó su *Oposición a "Solicitud de Orden con Relación al Pago en Concepto de Reembolso de Gastos" [...].*[15] Acreditó que la obligación alimentaria antes de 7 de octubre de 2022 requería que se satisficiera la cuantía de $238.00 dos (2) veces al año para gastos escolares.

El 23 de noviembre de 2022, la señora **Molina Lugo** presentó una *Solicitud de Reconsideración Relacionada a Orden del 4 de noviembre de 2022, Notificada y Archivada en Autos el 8 de noviembre de 2022 sobre Reunión entre Abogados.*[16]

El 12 de diciembre de 2022, la señora **Molina Lugo** presentó *Solicitud Reiterando Desacato por Incumplimiento con el Pago de Reembolso en Concepto de Gastos Escolares y Gastos Médicos no Cubiertos por el Plan.* Argumentó que el señor **Ramos Rolón** había incumplido con el pago en concepto de reembolso de gastos escolares y médicos no cubiertos por el plan **desde el establecimiento de la pensión provisional**. En la misma fecha, se emitió *Orden* concediendo un plazo final de cinco (5) días para pagar

---

[12] Apéndice del *Certiorari*, págs. 77- 162.
[13] *Íd.*, págs. 163- 164.
[14] *Íd.*, págs. 163- 164 y 165- 168.
[15] *Íd.*, págs. 169- 185.
[16] *Íd.*, págs. 186- 191.

cualquier gasto extraordinario escolar o médico que se le haya notificado desde octubre de 2022 hasta el presente".[17] El 15 de diciembre de 2022, se determinó la siguiente *Orden*: "Por última ocasión, se ORDENA a las partes revisar con detenimiento todos los pagos realizados y recibidos. El asunto de la deuda retroactiva, de gastos extraordinarios **TIENE** que ser discutida de buena fe entre las partes ante[s] de ocupar el calendario del Tribunal con mociones e información parcial o incompleta".[18] Seguidamente, el 16 de diciembre de 2022, el señor **RAMOS ROLÓN** presentó una *Petición de Consignación* expresando que la pensión alimentaria provisional se encuentra al día pero solicitó consignar la cuantía de $1,998.00 por existir controversia sobre la alegada deuda de gastos escolares o médicos.[19] El 20 de diciembre de 2022, se intimaron dos (2) *Órdenes* en las cuales, entre otras cosas, se autorizó la consignación de los fondos.[20]

Luego, el 10 de enero de 2023, se celebró audiencia sobre revisión de pensión alimentaria ante el examinador de pensiones alimentarias. El 17 de enero de 2023, se rindió el *Acta* recomendando aprobar la **estipulación final** que fuese ratificado, bajo juramento, por las partes.[21] El 19 de enero de 2023, se prescribió *Resolución* mediante la cual se aprobó la estipulación concerniente a la obligación alimentaria.[22]

El 8 de febrero de 2023, se precisó una *Orden* requiriéndoles a las partes expresarse sobre el dinero consignado ($1,998.00) ante el Tribunal dentro del plazo de veinte (20) días.[23] Así las cosas, el 17 de febrero de 2023,

---

[17] Apéndice de la *Oposición a que se Expida el Auto de Certiorari*, págs. 8- 9.

[18] *Íd.*, pág. 10.

[19] El escrito está acompañado del Recibo Oficial número 8449 por la suma de $1,998.00. Apéndice del *Certiorari*, págs. 192- 193.

[20] *Íd.*, págs. 194- 196.

[21] *Íd.*, págs. 197- 198.

[22] El señor **RAMOS ROLÓN** pagará $204.30 bisemanales, más el pago directo de las mensualidades de colegio, matrícula y trabajos de ortodoncia por concepto de *pensión alimentaria*. El pago se realizará mediante *Orden de Retención de Ingresos* a depositarse en cuenta en la Administración para el Sustento de Menores (ASUME), **efectivo el 7 de octubre de 2022**. En adición, el señor **RAMOS ROLÓN** continuará proveyendo el plan médico y asumirá el 100% de los *gastos médicos* no cubiertos por el plan, así como los de regreso a la escuela de materiales, uniformes, libros y educativos extraordinarios. Excluyendo el tratamiento de ortodoncia y deducibles médicos regulares. Se impuso $600.00 en concepto de honorarios de abogados. El inciso 4 expresa: "[n]o **se reclama deuda por concepto de retroactivo**". Apéndice del *Certiorari*, págs. 199- 201.

[23] Apéndice del *Certiorari*, págs. 202- 203.

la señora **MOLINA LUGO** presentó su *Escrito en Cumplimiento de Orden*.[24]

Reclamó que se autorizara el retiro de la cantidad consignada de $1,998.00 en

concepto de reembolso de los gastos escolares y médicos **adeudados desde**

**el pasado mes de octubre de 2022** a favor de la señora **MOLINA LUGO**. A

continuación, el 28 de febrero de 2023, el señor **RAMOS ROLÓN** presentó una

*Moción en Cumplimiento de Orden y Solicitando Retiro de Fondos*.[25] Adujo que

el señor **RAMOS ROLÓN** no adeuda pensión alimentaria y haber pagado la

suma de $600.00 por concepto de los honorarios. El 10 de marzo de 2023, la

señora **Molina Lugo** presentó *Oposición a Moción en Cumplimiento de Orden*

*y Solicitud de Retiro de Fondos y Solicitud para que se Ordene el Pago de la*

*Deuda de Pensión Alimentaria ante Incumplimiento de Joel Ramos Rolón con*

*Orden del 15 de diciembre de 2022 sobre Reunión entre Abogados y Término*

*para Presentar Informe Conjunto*.[26]

Tiempo después, el 3 de abril de 2023, luego de escuchar el audio de la

audiencia celebrada ante el examinador de pensiones alimentarias, se

enmendó la *Resolución* sobre pensión alimentaria.[27] En la misma fecha, se

tramitó *Orden* concediendo diez (10) días al señor **RAMOS ROLÓN** para

mostrar causa por la cual no se le debía imponer sanción de $200.00 por

inducir a error al tribunal; concediéndoles veinte (20) días para confeccionar

un informe de conferencia con antelación al juicio; y requiriéndoles

suministrar tres (3) fechas hábiles para el mes de junio de 2023.[28] El 13 de abril

de 2023, el señor **RAMOS ROLÓN** presentó *Moción en Cumplimiento de Orden*

en la cual expuso las razones por las cuales se le debía eximir del pago de una

sanción.[29] En consecuencia, el 17 de abril de 2023, se concluyó *Orden*

---

[24] Apéndice del *Certiorari*, págs. 204- 210.

[25] *Íd.*, págs. 211- 220.

[26] *Íd.*, págs. 221- 223.

[27] *Íd.*, págs. 224- 226.

[28] Esta *Orden* expresa: "[l]uego de escuchar la regrabación de la vista ante el Examinador de Pensiones [...], no alberga duda que el acuerdo logrado entre las partes era exclusivamente relacionado a establecer la pensión actual que regiría de forma prospectiva y que la estipulación de que no se reclama deuda por retroactivo se limitaba exclusivamente a la pensión que estaba siendo pactada durante la vista del 10 de enero de 2023". Apéndice del *Certiorari*, págs. 227- 229.

[29] Apéndice del *Certiorari*, págs. 230- 235. Manifestó, entre otras cosas, que la *Resolución* expresaba que las partes habían acordado de "manera final los aspectos relacionados a la pensión y controversias pendientes" y sabido es que aun cuando la señora **MOLINA LUGO**

manteniendo el dinero consignado así como ordenándoles a las partes reunirse y presentar una moción conjunta.[30]

El 24 de abril de 2023, los señores **MOLINA LUGO** y **RAMOS ROLÓN** presentaron el *Informe Conjunto de Conferencia Ordenado por el Tribunal el 4 de noviembre de 2022*.[31] Luego de varios incidentes procesales y haber celebrado audiencia, el 20 de diciembre de 2023, se dictaminó *Resolución* sobre la vista sobre desacato concluyendo que "no existe deuda de pensión ni de gastos extraordinarios".[32]

El 9 de enero de 2024, el señor **RAMOS ROLÓN** presentó *Moción Solicitando Retiro de Fondos* en la cual peticionó que se le ordenara librar un cheque por la cantidad de $1,998.00 a su favor.[33] Al día siguiente, el 10 de enero de 2024, la señora **MOLINA LUGO** presentó su *Oposición a Moción Solicitando Retiro de Fondos*.[34] Discutió la existencia de **deuda de gastos escolares y médicos sujetos a reembolso desde octubre de 2022**. El 23 de abril de 2024, se expidió *Orden* pautando audiencia para el 24 de junio de 2024.[35] Finalmente, 25 de junio de 2024, se decidió la *Resolución* recurrida.

En desacuerdo, el 29 de julio de 2024, el señor **RAMOS ROLÓN** recurrió ante este foro revisor intermedio. En su petitorio, señala el(los) siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia al determinar que [el Peticionario] adeudaba la cantidad de $1,998.00 para el periodo de julio a octubre de 2022, a pesar de que, la Recurrida no presentó documentación alguna para acreditar dicha deuda durante la vista evidenciaria.

> Erró el Tribunal de Primera Instancia al determinar que [el Peticionario] adeudaba la cantidad de $1,998.00 para el periodo de julio a octubre de 2022, cuando se determinó

---

hubiese interpretado que le fuese adversa no presentó solicitud de enmienda *nunc pro tunc*, reconsideración o recurso de apelación; por lo cual, el pronunciamiento había advino final, firme e inapelable. Reconoció que el tribunal, en el ejercicio de su discreción, enmendó dicha *Resolución* e interpeló que se retuviese el dinero consignado hasta que se resolviera la controversia.

[30] Apéndice del *Certiorari*, págs. 236- 237.

[31] *Íd.*, págs. 239- 263.

[32] Esta *Resolución* concierne a la reclamación de desacato presentada el 9 de septiembre de 2022 y tabulada en escrito de 11 de octubre de 2022 por la señora **MOLINA LUGO**. Apéndice del *Certiorari*, págs. 264- 272.

[33] *Íd.*, págs. 273- 274.

[34] *Íd.*, págs. 275- 278.

[35] *Íd.*, pág. 238.

que no existía deuda alguna por concepto de pensión alimentaria y de gastos extraordinarios.

Erró el Tribunal de Primera Instancia al determinar que [el Peticionario] adeudaba la cantidad de $1,998.00 para el periodo de julio a octubre de 2022, a pesar de que, la nueva pensión establecida mediante estipulación entre las partes fue efectiva al 7 de octubre de 2022.

Erró el Tribunal de Primera Instancia al ordenar el desembolso de los $1,998.00 consignados, sin descontar los créditos existentes a favor del Peticionario.

Erró el Tribunal de Primera Instancia al imponer el pago de $3,000.00 por concepto de honorarios, por solicitar el desembolso de la suma consignada, a pesar de que, la Resolución dictada la cual es final, firme e inapelable, determinó clara el inequívocamente que no adeuda suma alguna a la parte Recurrida.

El 19 de agosto de 2024, pronunciamos *Resolución* concediendo, entre otras cosas, término de diez (10) días a la señora **MOLINA LUGO** para exponer su posición sobre el recurso. El 3 de septiembre de 2024, la señora **MOLINA LUGO** presentó *Oposición a que se Expida el Auto de Certiorari*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[36] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[37]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[38]

---

[36] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[37] *Íd.*
[38] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[39]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[40] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[41] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[42]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones (Reglamento).[43]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[44] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

---

[39] *Íd.*

[40] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*

[41] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

[42] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra; McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

[43] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra.*

[44] *Íd.*

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[45]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[46] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[47] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[48]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[49] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[50]

---

[45] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[46] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[47] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[48] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.
[49] *García v. Asociación*, 165 DPR 311, 322 (2005).
[50] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## - B – *Obligación Alimentaria*

El deber de alimentar a los hijos es inherente a la paternidad y maternidad independientemente de las fuentes de las cuales emana la obligación de alimentar.[51] Su fundamento ético descansa en el derecho natural, en los lazos indisolubles de amor, solidaridad humana y de profunda responsabilidad de las personas por los hijos que traen al mundo.[52] La base estatutaria de esta obligación la encontramos en la Constitución de Puerto Rico, pues emana del propio derecho a la vida consagrado en la Carta de Derechos.[53]

Nuestro Código Civil de Puerto Rico de 2020 instituye los lineamientos más generales de la obligación de alimentar a los hijos e hijas menores de edad, mientras la *Ley Orgánica de la Administración para el Sustento de Menores*, (*Ley de ASUME*) y las *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico* (*Guías Mandatorias*) proveen los parámetros más específicos.[54]

Por alimentos se entiende todo lo que es indispensable para el sustento del(de la) menor, su habitación, vestido, recreación, asistencia médica y educación, según la posición social de la familia.[55] Por tratarse de un derecho que surge de la filiación, ambos progenitores están obligados a proveer alimentos.[56]

El criterio rector al momento de fijar la cuantía de una pensión alimentaria es que esta sea proporcionada entre los recursos económicos del alimentante y las necesidades del alimentista.[57] Este precepto, conocido

---

[51] *De León Ramos v. Navarro Acevedo,* 195 DPR 157, 169 (2016) *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 560- 561 (2012).

[52] Sarah Torres Peralta, *La Ley de Sustento de Menores y el Derecho Alimentario de Puerto Rico*, San Juan, Publicaciones STP, Inc., Edición 2006, Tomo I, pág. 1.11; *Umpierre Matos v. Juelle, Mejías,* 203 DPR 254, 266 (2019), citando a *Argüello v. Argüello,* 155 DPR 62, 69 (2001).

[53] *Díaz Rodríguez v. García Neris,* 208 DPR 706 (2022).

[54] *Ley Orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA § 501 *et al.*; *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico*; Reglamento Núm. 9535, Administración para el Sustento de Menores, 15 de febrero de 2024.

[55] Artículo 653 del Código Civil de 2020, 31 LPRA § 7531.

[56] Artículo 558 del Código Civil de 2020, 31 LPRA § 7104.

[57] El Artículo 146 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 565, disponía que "[l]a cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe [...]". El Código Civil de 2020 mantiene un lenguaje similar en

como *principio de proporcionalidad*, exige "que se establezca un balance entre los intereses del menor y la capacidad económica de aquellos responsables de costear esas necesidades".[58] El *principio de proporcionalidad* se integra tanto en la *Ley de ASUME* como en los procedimientos descritos en las *Guías Mandatorias*.[59]

De otra parte, la *Ley de ASUME* ordenó la adopción de las *Guías Mandatorias* para uniformar y facilitar la determinación de pensiones alimentarias mediante el empleo de criterios numéricos y descriptivos, siempre en función de los ingresos de los progenitores.[60] En pos de este objetivo, el Artículo 19 la *Ley de ASUME,* hace obligatorio el empleo de los procedimientos descritos en las *Guías Mandatorias* para el cómputo de las pensiones alimentarias.[61] Dicho artículo lee como sigue:

> En todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, **será mandatorio** que el Tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en este Artículo.[62]

La determinación de la situación económica del progenitor alimentante y de las necesidades del menor alimentista se viabiliza por medio de un descubrimiento de prueba compulsorio.[63] Para ello, la Ley de ASUME requiere la utilización de un formulario guía: la *Planilla de Información Personal y Económica* (P.I.P.E.). Así surge del precitado Artículo 16, donde se dispone que:

> La Oficina de Administración de los Tribunales preparará un formulario para servir de guía respecto de la información mínima requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante. El formulario completado y juramentado, u otro documento similar, también juramentado, que contenga toda la información requerida deberá radicarse en la secretaría del

---

su Artículo 666 al expresar que: "[l]a cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyen las necesidades del alimentista y los recursos del obligado.". 31 LPRA § 7567. Respecto a la cuantía de los alimentos de los hijos menores de edad, el Código Civil vigente decreta que "se fija siguiendo los criterios dispuestos en la ley especial complementaria". Véase, además, *Pesquera Fuentes v. Colón Molina,* 202 DPR 93, 108 (2019); *Llorens Becerra v. Mora Monteserín,* 178 DPR 1003, 1016 (2010).

[58] *Pesquera Fuentes v. Colón Molina, supra; De León Ramos v. Navarro Acevedo, supra,* pág. 171.

[59] *De León Ramos v. Navarro Acevedo, supra*, pág. 172.

[60] *Santiago Texidor v. Maisonet Correa,* 187 DPR 550, 569 (2012); *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728, 762 (2009).

[61] 8 LPRA § 518.

[62] *Íd.*

[63] Artículo 16 de la Ley de ASUME, 8 LPRA § 515.

tribunal y notificarse a la otra parte con antelación a la vista y sujetará al declarante a las penalidades dispuestas para el delito de perjurio. (Énfasis suplido).[64]

En cualquier caso, la utilización de la *Planilla de Información Personal y Económica* (P.I.P.E.) no constituye un impedimento para el empleo de los mecanismos de descubrimiento de prueba contemplados en las Reglas de Procedimiento Civil de 2009.[65] Asimismo, el estatuto permite la imposición de las sanciones contempladas por las Reglas de Procedimiento Civil de 2009 para compeler a una parte que se niega a descubrir evidencia.[66]

### - C – *Aceptación de Capacidad Económica*

Ciertamente los foros llamados a determinar y adjudicar las pensiones alimentarias de menores de edad deben actuar dentro de los parámetros instituidos por la *Ley de ASUME* y las *Guías Mandatorias*. Empero, la jurisprudencia del Tribunal Supremo de Puerto Rico reconoce una notable excepción: cuando un progenitor alimentante admite que cuenta con medios económicos suficientes para satisfacer la totalidad de los gastos razonables del menor alimentista se prescinde, por innecesario, del descubrimiento de prueba sobre la condición económica de dicho alimentante.[67] Sin ese descubrimiento, las *Guías Mandatorias* son inaplicables. Esto es lo que se conoce como *aceptación de capacidad económica*. En estos casos, al calcular la pensión alimentaria, no se utilizan los ingresos de ambos progenitores para establecer una carga proporcional a los medios de cada uno, sino que la persona custodia está obligada a establecer cuáles son los gastos razonables de los menores para determinar así cuánto debe aportar la persona no custodia.[68] "Aceptada la capacidad económica [de la persona no custodia], sólo resta que el tribunal determine *la suma justa y razonable en concepto de pensión alimentaria para los menores… con relación a sus necesidades [...]*".[69]

---

[64] *Íd.*
[65] *Íd.*
[66] *Íd.*
[67] *Díaz Rodríguez v. García Neris, supra,* pág. 719; *Pesquera Fuentes v. Colón Molina, supra,* pág. 110, citando a *Chévere v. Levis,* 150 DPR 525, 544 (2000).
[68] *De León Ramos v. Navarro Acevedo, supra,* pág. 175.
[69] *Santiago, Maisonet v. Maisonet Correa, supra,* citando a *Chévere v. Levis, supra,* pág. 545. (Énfasis en el original).

Lo que constituirá una suma razonable puede variar dependiendo de las circunstancias particulares de cada caso. De este modo, "las necesidades razonables de un menor cuyos padres son ricos pueden incluir cosas que pudieran ser consideradas como frívolas por padres de menos recursos económicos".[70] Así pues, en los casos apropiados, la pensión alimentaria deberá ser fijada tomando en consideración "la condición económica, el estilo de vida del alimentante y las peculiares necesidades de los menores incluyendo el estilo de vida al cual éstos fueron acostumbrados".[71]

"[C]uando un padre [o madre] alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias."[72] Como beneficio de aceptar capacidad económica la persona alimentante no puede ser compelida a revelar información sobre su patrimonio.[73] A cambio, esta se obliga a cubrir el cien por ciento (100%) de la pensión adjudicada, y queda, además, impedida de impugnar posteriormente la pensión que se establezca, alegando que no tiene capacidad económica para pagarla.[74] Esta prohibición, no obstante, "no se refiere a que no se pueda impugnar la cuantía de la pensión porque resulte contraria a la prueba o porque sea irrazonable a la luz de las necesidades de los menores".[75]

- III –

En el presente caso, el señor **RAMOS ROLÓN** argumentó que incidió el tribunal de instancia al cometer los siguientes errores: (i) determinar que adeudaba la cantidad de $1,998.00 para el periodo de julio a octubre de 2022 pese a la señora **MOLINA LUGO** no haber presentado documentación alguna para

---

[70] *Chévere v. Levis, supra,* pág. 504.
[71] *Íd.,* pág. 505.
[72] *Pesquera Fuentes v. Colón Molina, supra,* pág. 110, citando a *Chévere v. Levis, supra,* pág. 544.
[73] *De León Ramos v. Navarro Acevedo, supra,* pág. 174.
[74] *Id.,* pág. 175.
[75] *Santiago, Maisonet v. Maisonet Correa, supra,* pág, 565.

acreditar lo descubierto durante la audiencia evidenciaria; (ii) precisar que debe la cantidad de $1,998.00 para los meses de julio a octubre de 2022, cuando se especificó que no existía deuda alguna por concepto de pensión alimentaria y gastos extraordinarios; (iii) disponer que existe una deuda por $1,998.00 para el tiempo de julio a octubre de 2022 pese a que la nueva obligación alimentaria fijada mediante estipulación entre las partes es efectiva a 7 de octubre de 2022; (iv) ordenar el desembolso de los $1,998.00 consignados sin descontar los créditos existentes a su favor; y (v) imponer el pago de $3,000.00 por concepto de honorarios por reclamar por el desembolso de la cuantía consignada pese a que la *Resolución* es una final, firme e inapelable especifica clara e inequívocamente que no adeuda suma alguna a la señora **MOLINA LUGO.**

Por otro lado, la señora **MOLINA LUGO** razonó que, en conformidad con la *Resolución* dispuesta el 17 de octubre de 2022, era la obligación del señor **RAMOS ROLÓN** reembolsar los gastos escolares ascendentes a $1,998.00 incurridos desde julio de 2022.

Como regla general, los tribunales aceptan los convenios y las estipulaciones a las que lleguen las partes para finalizar un pleito.[76] En casos de alimentos, un tribunal debe asegurarse que los acuerdos no son dañinos para el(los) menor(es) dado que satisface adecuadamente sus necesidades, así como el progenitor alimentante tiene los medios económicos suficientes para cumplir.[77]

En la audiencia sobre alimentos, celebrada el 10 de enero de 2023 ante el examinador de pensiones alimentarias, las partes informaron haber logrado una **estipulación final** y la misma fue ratificada bajo juramento. Ante ello, se recomendó al tribunal aprobar el convenio final y se redactó el proyecto de *Resolución* acogiendo el mismo. Así las cosas, el 19 de enero de 2023, se pronunció *Resolución* imponiendo la pensión alimentaria final.

Ulteriormente, luego de escuchar la grabación de la audiencia celebrada, se dictaminó una *Resolución Enmendada* en la cual se reiteró que

---

[76] *Díaz Rodríguez v. García Neris, supra; Igaravidez v. Ricci,* 147 DPR 1 (1998).
[77] *Íd.*

dichos alimentos eran efectivo al **7 de octubre de 2022** y no se reclamaba deuda por concepto de retroactivo en cuanto a la pensión establecida. No cabe duda de que la *Resolución Enmendada* sobre la pensión alimentaria fijada en el presente caso le requiere al señor **RAMOS ROLÓN** pagar "$204.30 bisemanales, más el pago directo de las mensualidades de colegio, matrícula y trabajos de ortodoncia por concepto de *pensión alimentaria*. El pago se realizará mediante *Orden de Retención de Ingresos* a depositarse en cuenta en la Administración para el Sustento de Menores (ASUME), **efectivo el 7 de octubre de 2022**. En adición, el señor **RAMOS ROLÓN** continuará proveyendo el plan médico y asumirá el 100% de los *gastos médicos* no cubiertos por el plan, así como los de regreso a la escuela de materiales, uniformes, libros y educativos extraordinarios. Excluyendo el tratamiento de ortodoncia y deducibles médicos regulares. Se impuso $600.00 en concepto de honorarios de abogados". Más aún, el inciso 4 expresa: "[n]**o se reclama deuda por concepto de retroactivo**".

Colegimos que los términos de este acuerdo sobre pensión alimentaria son claros y no dejan duda sobre la voluntad de las partes. Esto es, la obligación alimentaria, que incluye tanto la mensualidad a depositarse en la Administración para el Sustento de Menores (ASUMe) como los gastos extraordinarios: escolares y médicos, tiene como fecha de efectividad el **7 de octubre de 2022**; fue evaluado por el examinador de pensiones alimentarias quien pudo constatar que no era perjudicial para el menor como tampoco producto de la irreflexión o coacción de alguna de las partes. Lo cual implica que **no** hay obligación alguna de retroactivo a 14 de julio de 2022. Más aún, ante la controversia y la imposibilidad de lograr un acuerdo sobre los gastos reclamados, el señor **RAMOS ROLÓN** determinó consignar la cantidad reclamada. Ante ello, nos resulta irrazonable y contrario a derecho que se le requiera al señor **RAMOS ROLÓN** el reembolso del 100% de los alegados gastos escolares y/o médicos incurridos para los meses de julio de 2022 hasta 6 de octubre de 2022 y se le haya encontrado en *temeridad*. Toda vez que para esa

fecha aún estaba vigente la obligación de alimentos impuesta el 29 de mayo de 2012. En consecuencia, el tribunal primario incidió en su proceder.

- IV -

Por los fundamentos antes expuesto, *expedimos* el auto de *certiorari* interpuesto el 29 de julio de 2024; *revocamos* la *Resolución* dictada el 25 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón; *dejamos sin efecto* la determinación sobre *temeridad;* *eliminamos* la imposición del pago de $3,000.00; y, en consecuencia, *ordenamos* a la Unidad de Cuentas del Tribunal Superior de Bayamón expedir un cheque por la totalidad de la cuantía consignada: $1,998.00 a favor del señor **RAMOS ROLÓN.**

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones